STATE OF NORTH CAROLINA v. SAMUEL PARKER

No. 97

(Filed 10 June 1971)

1. Homicide § 14— manslaughter — proof that knife was deadly weapon

Since an unlawful killing (without malice) of a human being constitutes manslaughter, proof that the knife used to stab decedent was a deadly weapon was not prerequisite to a verdict of guilty of manslaughter.

2. Homicide § 14— intentional use of deadly weapon causing death — presumptions

If the State satisfied the jury from the evidence beyond a reasonable doubt that defendant stabbed decedent with a knife which constituted a deadly weapon and the stab wound so inflicted proximately caused her death, these facts would give rise to the presumptions that the killing was unlawful and with malice, the essentials of murder in the second degree.

3. Homicide § 27— instructions — reduction of crime to manslaughter — harmless error

Error, if any, in instructions referring to the circumstances by which defendant could reduce the crime from murder in the second degree to manslaughter by establishing to the satisfaction of the jury facts sufficient to negate malice was harmless where defendant was convicted of manslaughter.

APPEAL by defendant from *Beal, S.J.,* August 31, 1970 Special Criminal Session of MECKLENBURG Superior Court, transferred for initial appellate review by the Supreme Court under general order of July 31, 1970, entered pursuant to G.S. 7A-31 (b) (4).

Defendant was indicted, in the form prescribed by G.S. 15-144, for the murder of "Phylis *(sic)* Diane Moore" on June 3, 1970. He pleaded not guilty and, at arraignment and at trial, was represented by privately retained counsel.

Evidence was offered by the State and by defendant. The State's evidence consisted of the testimony of Mrs. Lula Zeek, Mrs. Sheila Smith, Mrs. Mary Flowe Moore and M. F. Green, the latter a member of the Charlotte Police Department. Defendant's evidence consisted solely of his own testimony.

It was stipulated: "(T)he deceased, Phyllis Diane Moore, came to her death as the result of a stab wound which entered

in the left shoulder area near the base of the left neck and passes obliquely down into the base of the neck on the left and then entered the superior mediastium. The wound being four inches in length from the skin surface down to the wound penetrating into and almost severing the left subclavian artery at its origin from the distal arch of the aorta resulting in massive hemorrhage and death on June 3, 1970."

### Uncontradicted Evidence

Mrs. Phyllis Diane Moore (Diane), who was soon to become 22 years of age, was the daughter of Mrs. Lula Zeek (Lula). The fatal wound was inflicted June 3, 1970, in Apartment #3, 2416 Julian Avenue, Charlotte, N. C., when the only persons in the apartment were Diane, Lula and defendant. After the stabbing, Diane got out of the front of the apartment, fell on the sidewalk and lay there until the ambulance arrived.

Lula and her husband had been separated since February, 1969. In August, 1969, Lula and defendant had moved into this apartment. During the greater part of the four weeks preceding June 3, 1970, Diane, who lived elsewhere, had been staying in this apartment, the primary purpose of her visit to the community being to look after the sick children of her older sister.

### State's Evidence

Diane returned from the house of Pat, her sister, about 5:20 p.m. For a half hour or more, Lula and Diane sat in the living room and talked and laughed about what Pat's children had been doing during the day. Defendant and David, a neighbor, were on the porch. Earlier in the afternoon they had gone for some gin. Diane turned on the stereo and Lula went to the kitchen to cook fish for supper. Defendant called to Diane in profane terms to cut off the stereo. Diane did so and then put up an ironing board and started to press her clothes. Defendant came into the house cursing and raving because Lula would not go with him to the Hi-Fi, an entertainment place. When Lula was in her bedroom, she heard a crash of glass in the living room. She ran into the living room and there saw defendant, with a kitchen knife, stab Diane twice. She "saw the blade part of the knife go into (her) daughter." Diane "turned in the door, . . . staggering back," with blood on her left shoulder.

When Lula undertook to get a towel and go to her daughter, defendant turned on Lula and struck her with the knife, then marched her, barefooted, through the back door of the apartment, across the back yard of the neighbor to the rear, and thence to the Statesville Avenue area. During this time, defendant had the knife at her back or around her neck. Over on Statesville Avenue, when defendant heard the ambulance and when two police cars began to close in on them, defendant "fipped it (the knife) in some honeysuckles." Policemen arrested defendant. Lula helped the policemen find the knife and identified it as the knife with which defendant had stabbed Diane. When defendant was stabbing her, Diane had nothing in her hands and Lula had not heard her say anything.

### Defendant's Evidence

He did not stab Diane. While he was on the porch, he "heard Lula and Diane carrying on, cursing with one another." Later, he went into the house and sat down to eat in the kitchen. Lula and Diane had gone out of the kitchen into the living room. Lula was still cursing Diane. Five to ten minutes later, Lula came back into the kitchen and got something out of the cabinet. Before this he had seen a knife in Lula's hand and had taken it from her and put it on the table in front of him. He had to scuffle with Lula in order to take the knife from her. After hearing further cursing of Diane by Lula, he heard "the door bam real hard which was the screen door," and jumped up and ran to the front door. When he got there he saw Diane lying in the yard on her back. Turning around, he saw Lula with a knife in her hand. In "scrambling with her" for the knife, he broke one of the small windows in the room. He came out on the porch and at that time was talking to Lula. Lula went out the back door and he chased her to force her back into the house. He took the knife from her and put it in his back pocket. He did not actually see Lula stab Diane but "there wasn't no one in there but Lula and Diane in the living room." On their way over to Statesville Avenue, defendant was trying to get Lula to go back to the house. When the two officers (M. F. Green and another) drove up, Lula took the knife out of defendant's pocket and threw it to the place where it was later found. Defendant testified: "When the officers came up, Lula said, 'He's the one, He's the one, He's the one!' She had never said that to me before that time. She was telling me to save her and keep the police from

getting her. I told her everything will be all right and not worry about it."

As to what occurred inside the apartment, the State's case rested upon the testimony of Lula. Mrs. Sheila Smith and Mrs. Mary Flowe Moore, Lula's neighbors, testified to what occurred when Diane was lying wholly or partially on the sidewalk in front of 2416 Julian Avenue. They testified they were on the front porch of the house directly across Julian Avenue from 2416. According to Mrs. Smith, when Diane was lying on the sidewalk with blood on her collar, defendant came out on the porch, stood there with a knife in his hand, cursed and then walked back into the apartment. A short time later she saw Lula and defendant go out the back door. Defendant was holding Lula by the neck and had a knife at her back. Mrs. Moore testified substantially to the same facts. She testified she went to help Diane but turned around and went home when defendant came out on the porch with a knife. M. F. Green's testimony substantially corroborates Lula's testimony as to what occurred on or near Statesville Avenue when Lula and defendant were located and defendant was arrested.

No evidence was offered in corroboration or support of the testimony of defendant.

The court instructed the jury they could return one of three possible verdicts, that is, guilty of murder in the second degree, or guilty of manslaughter, or not guilty.

The jury returned a verdict of "guilty of voluntary manslaughter." Judgment imposing a prison sentence of not less than 16 nor more than 18 years was pronounced. Defendant excepted and appealed.

Upon finding that defendant was then an indigent, the court appointed his trial counsel to represent him in prosecuting his appeal and ordered the State of North Carolina to pay all expenses incident thereto.

*Attorney General Morgan and Assistant Attorneys General Melvin and Costen for the State.*

*W. Herbert Brown, Jr., for defendant appellant.*

State v. Parker

BOBBITT, Chief Justice.

Defendant has abandoned the assignments of error based on his exceptions to the denial of his motions to dismiss under G.S. 15-173. Obviously, these assignments were without merit. Defendant's remaining assignments relate to three disconnected portions of the charge to the jury.

[1] The court instructed the jury that, before they could return a verdict of guilty of murder in the second degree or a verdict of guilty of manslaughter, the State had to satisfy them from the evidence beyond a reasonable doubt that defendant stabbed Diane with a knife; that the knife was a deadly weapon; that the knife passed through her upper left shoulder about the collar-bone and penetrated into her body; and that the stab wound so inflicted by defendant proximately caused Diane's death. Since an unlawful killing (without malice) of a human being constitutes manslaughter, proof that the knife was a deadly weapon was not a prerequisite to a verdict of guilty of manslaughter. Suffice to say, the instruction was not unfavorable to defendant. It served to draw into focus the crucial issue, namely, whether Lula or defendant stabbed and killed Diane.

[2, 3] If the State satisfied the jury from the evidence beyond a reasonable doubt that defendant stabbed Diane intentionally with a knife which constituted a deadly weapon and the stab wound so inflicted proximately caused her death, these facts would give rise to the presumptions that the killing was unlawful and with malice, the essentials of murder in the second degree. *State v. Barrow,* 276 N.C. 381, 390, 172 S.E. 2d 512, 518 (1970), and cases cited. The court charged the jury to that effect. The challenged excerpts from the charge presuppose the jury so found and that presumptions that the killing was both unlawful and with malice had arisen. They refer to the circumstances by which defendant could reduce the crime from murder in the second degree to manslaughter by establishing to the satisfaction of the jury facts sufficient to negate malice. Since defendant was convicted of manslaughter, error, if any, in these excerpts was harmless. Principles of law relating to self-defense were not involved.

Upon sharply conflicting evidence, the jury found that defendant stabbed and killed Diane. If so, under the evidence, defendant was guilty of manslaughter at least. Hence, the verdict and judgment will not be disturbed.

No error.